AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

In Re: *Ex Parte* Application of
General Electrical Co.
For An Order to Take Discovery
Pursuant to 28 U.S.C. § 1782.

Civil Action No.

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: Siemens Gamesa Renewable Energy, Inc.

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:
See Schedule A (Onshore).

| Place: | Hogan Lovells US LLP<br>125 High St #2010<br>Boston, MA 02110 | Date and Time:<br>04/14/2022 10:00 am |
|---|---|---|

The deposition will be recorded by this method: Stenographer and Videographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
See Schedule B (Onshore). Documents shall be produced on March 31, 2022 to the office of Hogan Lovells US LLP, 125 High St. #2010, Boston, MA 02110.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____  _____
*Signature of Clerk or Deputy Clerk*        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____, who issues or requests this subpoena, are:

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Schedule A (Onshore)

## Deposition Topics

### DEFINITIONS

1. "SGRE Inc." shall mean Siemens Gamesa Renewable Energy, Inc., including, without limitation, all of its corporate locations, and all past or present officers, directors, agents, and employees.

2. "Affiliate" shall mean any entity, individual, firm, or corporation, that, directly or indirectly, controls, is controlled by, or is under common control with SGRE Inc.

3. "GE" shall mean General Electric Company.

4. The "Subpoena" shall mean the subpoena served on SGRE Inc. by GE.

5. A "Zero Voltage Event" refers to when a wind turbine detects or measures a drop in power grid voltage and/or in voltage of an electrical power system to a level that is equal to zero volts or that is so low that the wind turbine is unable to detect phase and frequency of the power grid voltage and/or of the voltage of the electrical power system.

6. "Zero Voltage Ride Through" or "ZVRT" refers to the ability or capability of a wind turbine to remain electrically connected to a power grid and/or electrical power system during and subsequent to a Zero Voltage Event.

7. "Relevant SGRE Wind Turbine" refers to any onshore wind turbine made, used, sold, or offered for sale by SGRE Inc. or its affiliates that includes ZVRT capabilities, including but not limited to the following wind turbines:

   a. For the period from July 14, 2020 to the present: the 2.X series (including SG 2.1-114, SG 2.2-122, SG 2.6-114, SG 2.9-129), the 3.X series (including SG 3.4-132, SG 3.4-145), the 4.X series (including SG 4.5-145, SG 4.7-155, SG 5.0-132, SG

5.0-145), the 5.X series (including SG 5.8-155, SG 5.8-170, SG 6.6-170, SG 6.6-155); SWT-DD-120, SWT-DD-130, SWT-DD-142, SWT-2.3-108, SWT-3.2-113, SWT-3.4-108, and SWT 3.6-130 wind turbines.

8. "Document" shall be construed under the broadest possible construction under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001. The term shall include without limitation any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, file, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, emails; pictures, photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including without limitation originals, drafts, and all non-identical copies of each document (which, by reason of any variation, such as the presence of absence of hand-written notes or underlining, represents a distinct version). By way of example, the term "document(s)" as used herein shall include, without limitation: correspondence; emails; letters; memoranda; handwritten or typewritten notes; inter-office and intra-office communications; technical specifications; technical, user, safety, or maintenance manuals; design drawings; functional or software diagrams or flow charts; software, including source code; checklists; notations or summaries of telephone conversations, meetings, or conferences; diaries; telegraphs; telegrams; telexes; metadata; minutes; agendas; contracts; reports; studies; checks; statements; receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; and all other tangible items of readable, recorded, or visual material of any kind.

9. "Related," "related to," "regarding," or "concerning" shall mean in whole or in part constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

10. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11. The terms "any," "all," and "each" shall each mean and include the other.

12. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

13. The singular form of any word shall be deemed to include the plural. The plural form of any word shall be deemed to include the singular.

## DEPOSITION TOPICS

1. The search for, nature, extent, and location of the Documents requested in the Subpoena.

2. The operation, electrical design, and architecture of Relevant SGRE Wind Turbines.

3. How Relevant SGRE Wind Turbines are connected to and/or coupled to a power grid and/or electrical power system, including, but not limited to, during and subsequent to a Zero Voltage Event.

4. How Relevant SGRE Wind Turbines functionally, operationally, and technically satisfy or comply with grid code requirements applying to or governing ZVRT.

5. How Relevant SGRE Wind Turbines are configured to remain electrically connected to the electric power system and/or power grid when there are changes in the voltage amplitude in the electrical power system and/or power grid, including during a Zero Voltage Event.

6. The layout and operation of Relevant SGRE Wind Turbines as it relates to the configured or configurable functions and operations for performing ZVRT or operating during a Zero Voltage Event.

7. The layout and operation of grid transformers in Relevant SGRE Wind Turbines, including, but not limited to, the voltage behavior at the terminals of the grid transformers during a Zero Voltage Event.

8. The layout and operation of the electrical control systems—including turbine controllers and converter controllers—of Relevant SGRE Wind Turbines as it relates to performing ZVRT.

9. How Relevant SGRE Wind Turbines prevent overcurrents in the inverter and/or generator rotor, particularly during a Zero Voltage Event, including, but not limited to, how the current in the inverter and generator rotor is measured, monitored, managed, or shunted.

10. How Relevant SGRE Wind Turbines prevent overvoltages in the DC link, particularly during a Zero Voltage Event.

11. How components of Relevant SGRE Wind Turbines, such as the turbine controllers and converter controllers function and are powered during a Zero Voltage Event.

12. All sales, offers for sale, and installations of Relevant SGRE Wind Turbines in Germany from July 14, 2020 to the present, including an identification of the models of Relevant SGRE Wind Turbines offered for sale and sold and the Siemens Gamesa entities responsible for

the manufacture, distribution, import, offer for sale and sale of those Relevant SGRE Wind Turbines.

## Schedule B (Onshore)

## Document Requests

The document requests below are served subject to all instructions and definitions set forth in Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, as well as to the instructions and definitions below.

### DEFINITIONS

1. "SGRE Inc." shall mean Siemens Gamesa Renewable Energy, Inc., including, without limitation, all of its corporate locations, and all past or present officers, directors, agents, and employees.

2. "Affiliate" shall mean any entity, individual, firm, or corporation, that, directly or indirectly, controls, is controlled by, or is under common control with SGRE Inc.

3. "GE" shall mean General Electric Company.

4. The "Subpoena" shall mean the subpoena served on SGRE Inc. by GE.

5. A "Zero Voltage Event" refers to when a wind turbine detects or measures a drop in power grid voltage and/or in voltage of an electrical power system to a level that is equal to zero volts or that is so low that the wind turbine is unable to detect phase and frequency of the power grid voltage and/or of the voltage of the electrical power system.

6. "Zero Voltage Ride Through" or "ZVRT" refers to the ability or capability of a wind turbine to remain electrically connected to a power grid and/or electrical power system during and subsequent to a Zero Voltage Event.

7. "Relevant SGRE Wind Turbine" refers to any onshore wind turbine made, used, sold, or offered for sale by SGRE Inc. or its affiliates that includes ZVRT capabilities, including but not limited to the following wind turbines:

  a. For the period from July 14, 2020 to the present: the 2.X series (including SG 2.1-114, SG 2.2-122, SG 2.6-114, SG 2.9-129), the 3.X series (including SG 3.4-132, SG 3.4-145), the 4.X series (including SG 4.5-145, SG 4.7-155, SG 5.0-132, SG 5.0-145), the 5.X series (including SG 5.8-155, SG 5.8-170, SG 6.6-170, SG 6.6-155); SWT-DD-120, SWT-DD-130, SWT-DD-142, SWT-2.3-108, SWT-3.2-113, SWT-3.4-108, and SWT 3.6-130 wind turbines).

  8. "Document" shall be construed under the broadest possible construction under Federal Rule of Civil Procedure 34 and Federal Rule of Evidence 1001. The term shall include without limitation any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on paper, cards, charts, file, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, emails; pictures, photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including without limitation originals, drafts, and all non-identical copies of each document (which, by reason of any variation, such as the presence of absence of hand-written notes or underlining, represents a distinct version). By way of example, the term "document(s)" as used herein shall include, without limitation: correspondence; emails; letters; memoranda; handwritten or typewritten notes; inter-office and intra-office communications; technical specifications; technical, user, safety, or maintenance manuals; design drawings; functional or software diagrams or flow charts; software, including source code; checklists; notations or summaries of telephone conversations, meetings, or conferences; diaries; telegraphs; telegrams; telexes; metadata; minutes; agendas; contracts; reports; studies; checks; statements;

receipts; returns; summaries; pamphlets; circulars; press releases; advertisements; books; bulletins; computer printouts; databases; teletypes; telefax; invoices; worksheets; photographs; tape recordings; and all other tangible items of readable, recorded, or visual material of any kind.

9. "Related," "related to," "regarding," or "concerning" shall mean in whole or in part constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

10. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

11. The terms "any," "all," and "each" shall each mean and include the other.

12. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

13. The singular form of any word shall be deemed to include the plural. The plural form of any word shall be deemed to include the singular.

## INSTRUCTIONS

1. Any responsive document in electronic form shall be produced in electronic form, including, without limitation, originals and all copies of email; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, and outlines; image files in any format; PDF files; and all other electronic files or file fragments, regardless of the media on which they are stored and regardless whether the data resides in an active file, deleted file, or file fragments.

2. All documents electronically produced shall be provided in a file format that can be read by a computer configured to process ADOBE ACROBAT®, Microsoft Word®, or

Microsoft Excel® formatted files, when possible. Should a document not be capable of being produced in one of these file formats (or in a standard image format), identify the software application, including the version number and trade name, that can be used to open such document.

3. Produce all documents in the order in which they appear in your files. Documents that, in their original condition, are stapled, clipped, or otherwise fastened together shall be produced in this same condition.

4. Produce all documents within your possession, custody, or control including all documents in the possession, custody, or control of any employee, agent, representative, consultant, attorney, accountant, advisors, or other persons directly or indirectly connected with you or subject to your control.

5. Pursuant to Fed. R. Civ. P. 45(d), you shall produce responsive documents as they have been kept in the usual course of business or shall organize and label them to correspond to the enumerated requests of this demand. If you have no documents responsive to a particular category, you shall state so in writing.

6. If any document responsive to these Document Requests is withheld under a claim of privilege, you shall, pursuant to Fed. R. Civ. P. 45(d)(2), identify the nature of the privilege (including work product) which is being claimed, and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and set forth the following information: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; (iv) such other information as is sufficient to enable GEC to contest the claim, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee

to each other. If a portion of a document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

7. If any document responsive to these Document Requests has been, but is no longer, in your possession, custody or control because it has been destroyed, discarded, or placed outside of your possession, custody or control, you shall furnish a list specifying each such document and setting forth the following information: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the name(s) and address(es) of each person who prepared, received, viewed, and has or has had possession, custody, or control of the document.

8. Pursuant to the Federal Rules of Civil Procedure, these requests are continuing and you must revise or supplement your responses and production whenever new or additional responsive information becomes known.

## DOCUMENT REQUESTS

1. Documents sufficient to show the operation, electrical design, and architecture of Relevant SGRE Wind Turbines.

2. Documents sufficient to show how Relevant SGRE Wind Turbines are connected to and/or coupled to a power grid and/or electrical power system, including, but not limited to, during and subsequent to a Zero Voltage Event.

3. Documents sufficient to show how Relevant SGRE Wind Turbines functionally, operationally, and technically satisfy or comply with grid code requirements applying to or governing ZVRT.

4. Documents sufficient to show how Relevant SGRE Wind Turbines are configured to remain electrically connected to the electric power system and/or power grid when there are

changes in the voltage amplitude in the electrical power system and/or power grid, including during a Zero Voltage Event.

5. Documents sufficient to show the layout and operation Relevant SGRE Wind Turbines as it relates to the configured or configurable functions and operations for performing ZVRT or operating during a Zero Voltage Event.

6. Documents sufficient to show the layout and operation of grid transformers in Relevant SGRE Wind Turbines, including, but not limited to, the voltage behavior at the terminals of the grid transformers during a Zero Voltage Event.

7. Documents sufficient to show the layout and operation of the electrical control system—including turbine controllers and converter controllers—of Relevant SGRE Wind Turbines as it relates to performing ZVRT.

8. Documents sufficient to show how the Relevant SGRE Wind Turbines use a phase locked loop (PLL) or a frequency locked loop (FLL) facilitating the wind turbines capability to ride through a Zero Voltage Event, including their ability to find the relevant phase and/or frequency of the grid in response to a Zero Voltage Event, and including any documents describing the algorithms and their specifications being part of the proportional-integral (PI) filter of such PLL or FLL.

9. Documents sufficient to show the interaction of the state machine with the algorithms and related signals of the PI filter used by Relevant SGRE Wind Turbines during normal operation, during a Zero Voltage Event, and directly after the Zero Voltage Event.

10. Documents sufficient to show how Relevant SGRE Wind Turbines prevent overcurrents in the inverter and/or generator rotor, particularly during a Zero Voltage Event,

including, but not limited to, how the current in the inverter and generator rotor is measured, monitored, managed, or shunted.

11. Documents sufficient to show how Relevant SGRE Wind Turbines prevent overvoltages in the DC link, particularly during a Zero Voltage Event.

12. Documents sufficient to show how components of Relevant SGRE Wind Turbines, such as the turbine controllers and converter controllers function and are powered during a Zero Voltage Event.

13. Documents sufficient to show all sales, offers for sale, and installations of Relevant SGRE Wind Turbines in Germany from July 14, 2020 to the present and additionally in, including an identification of the models of Relevant SGRE Wind Turbines offered for sale and sold and the Siemens Gamesa entities responsible for the manufacture, distribution, import, offer for sale and sale of those Relevant SGRE Wind Turbines.