IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF **GENERAL ELECTRIC CO.** FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782. | Case No. 1:22-mc-91125-IT<br><br>Judge Indira Talwani<br><br>*Leave to File granted on May 27, 2022 (Doc. No. 23)* |

**GENERAL ELECTRIC CO.'S REPLY IN SUPPORT OF ITS APPLICATION TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

General Electric Co. ("GE") asked this Court for assistance under 28 U.S.C. § 1782 to obtain discovery from Siemens Gamesa Renewable Energy, Inc. ("SGRE, Inc."). (the "Application," Doc. No. 1.) The information will be used in foreign patent infringement proceedings that are pending and reasonably contemplated in Germany and Spain involving SGRE and GE entities (the "Foreign Proceedings"). Importantly, in an earlier § 1782 proceeding before this court, SGRE, Inc. produced technical documents similar to those requested in this proceeding, including documents similar to those it now urges are held abroad. *Stipulation, In Re General Electric Co.*, Case No. 1:21-mc-91075 (D. Mass. Aug. 30, 2021), Doc. No. 57. Those earlier produced documents were provided pursuant to an agreed-to protective order and were, in fact, used in foreign proceedings between SGRE and GE entities, where the SGRE entities were found to infringe. For this reason and the reasons described in GE's Application, SGRE, Inc. should not be permitted to block GE's discovery efforts, as it attempts in its opposition to the Application. (Doc. No. 17.)

1

Further, SGRE, Inc.'s three substantive arguments in opposition to GE's Application are incorrect. First, SGRE, Inc. contends that all documents GE requests in the Application are located outside the United States and thus are not discoverable under § 1782. But § 1782 does not prohibit discovery of documents merely because they may be held outside the United States. Secondly, SGRE, Inc. urges that the documents GE requests in its Application are outside SGRE, Inc.'s possession, custody, and control. SGRE, Inc. concedes, however, that it has physical possession of technical documents sought by GE and that its employees regularly access, possess, and control technical documents from related SGRE entities purportedly located outside of the United States. (*See* Doc. No. 17 at 8-9; *see also* Doc. No. 19 ¶¶ 12-13 (describing SGRE, Inc.'s possession of "Grid Performance Specifications"); Doc. No. 20 ¶¶ 8-9.) Lastly, SGRE, Inc. argues that granting the Application would allow GE to circumvent ITC confidentiality rules. (*See* Doc. No. 17 at 11-12.) This argument too lacks merit because the parties have already exchanged drafts of a protective order for documents to be produced in this proceeding that is similar to the protective orders agreed to and entered in the parties' ITC case and earlier § 1782 proceeding before this court.

The Court should grant GE's Application for discovery from SGRE, Inc.

### I.   Section 1782 Authorizes Discovery of the SGRE, Inc.'s Technical Documents and Information Sought by GE's Subpoenas

SGRE, Inc. incorrectly urges that GE's Application should be denied because (1) § 1782 allegedly cannot be used to order production of any foreign-located documents and (2) SGRE, Inc. supposedly does not have possession, custody, or control of any foreign-located documents held by entities related to SGRE, Inc. SGRE, Inc. is wrong on both counts.

As courts in this Circuit have held, § 1782 authorizes discovery of foreign-located documents. In *In re Application of Polygon Global Partners LLP*, the court faced a similar

2

situation: a foreign corporate affiliate of the § 1782 Application recipient held responsive documents abroad. No. 21-mc-007 WES, 2021 WL 1894733, *3 (D. R.I. May 11, 2021). The court reasoned that that neither the plain language of the § 1782 nor the Federal Rules of Civil Procedure prohibit discovery of foreign-held documents. *Id.* Some district courts have come to the opposite conclusion, but the *Polygon Global* court followed the "weight of the case law" and joined the Second and Eleventh Circuits in its holding. *Id.* Those Circuits agreed that, by authorizing discovery pursuant to the Federal Rules, Congress intended § 1782 to reach documents held abroad, rejecting arguments based on the "presumption against extraterritoriality" canon. *See In re del Valle Ruiz*, 939 F.3d 520, 532-33 & n.16 (2d Cir. 2019) (citing *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1199-200 (11th Cir. 2016)).

Although SGRE, Inc. suggests that a significant split of authority exists on the issue, the caselaw does not bear that out. No Circuit Courts have held that § 1782 is limited to U.S.-held documents. And the Second Circuit has since repudiated its earlier dicta that district courts had relied on to conclude that § 1782 does not apply extraterritorially. *See Valle Ruiz*, 939 F.3d at 532 n.16, 533 (citing *Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997)); *see, e.g.*, *In re Stati*, No. 15-MC-91059-LTS, 2018 WL 474999, at *6 (D. Mass. Jan. 18, 2018) (relying on the same statements in *Sarrio* to illustrate the split).

Further, and significantly, even if requested technical and other documents are foreign-located, here, SGRE, Inc. has possession, custody, or control over such documents held by its foreign affiliates. A corporate subsidiary "controls" documents of its corporate parent where, for example:

> "the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in litigation;"
> "[the subsidiary can] access [the] documents when the need arises in the ordinary course of business;" [or]

3

"the subsidiary [is] a marketer and servicer of parent's product . . . in the United States."

*FM Generator, Inc. v. MTU Onsite Energy Corp.*, No. 14-14354-DJC, 2016 WL 8902603, *3 (D. Mass. Aug. 25, 2016) (quoting *Pitney Bowes, Inc. v. Kern Intern., Inc.*, 239 F.R.D. 62, 66-67 (D. Conn. 2006)). Each is true here. SGRE, Inc. acquired technical documents from its foreign corporate relatives for use in defending its recent ITC case opposite GE relating to the same ZVRT wind turbine technology at issue in the Foreign Proceedings, which are the subject of GE's Application.[1] Also, SGRE, Inc. admits that its personnel can access technical documents from its related corporate entities "upon a certified business-specific need." (*See* Doc. No. 17 at 8-9; Doc. No. 19 ¶ 10.) And SGRE, Inc. is the U.S. servicer and marketer of the Siemens Gamesa ZVRT wind turbines. (Doc. No. 17 at 3.) The multiple bases for "control" here show discoverability of the requested documents even if they are foreign-held. *See LSI Corp. v. Vizio*, No. 12-mc-91068, 2012 WL 1926924, *5 & n.4 (D. Mass. May 24, 2012) (collecting cases); *see also FM Generator*, 2016 WL 8902603, *2-3.

Although SGRE, Inc. generally argues that it does not have possession, custody, or control of documents that would be responsive to GE's document requests, (*see* Doc. No. 17 at 8), SGRE, Inc.'s declarants admit that it has actual possession of responsive documents. For example, SGRE, Inc.'s director of engineering and director of project acquisitions describe "Grid Performance Specifications" that SGRE, Inc. apparently provides to customers to describe wind turbine operation. (*See* Doc. No. 19 ¶¶ 12-13; Doc. No. 20 ¶¶ 8-9.) SGRE, Inc. and its declarants make no argument that these are the *only* technical documents that SGRE, Inc. provides to customers or otherwise ever has in its possession.

---

[1] Based on its arguments, SGRE, Inc. concedes that it possesses responsive technical documents relating to its ZVRT wind turbines that were produced in the ITC case. (*See* Doc. No. 17 at 9-11.)

4

## II.  SGRE, Inc. Likely Possesses Additional Technical Documents in the U.S.

In fact, GE has reasons to believe that SGRE, Inc. possesses relevant technical documents in the U.S. beyond what it and its declarants admit. First, SGRE, Inc. produces components for numerous ZVRT wind turbines identified in GE's subpoenas at factories in the U.S. (*See* Doc. No. 17 at 4-5 & n.2; Doc. No. 19 ¶ 15 & n.1; Doc No. 20 ¶ 11 & n.1; *see also* Ex. 1 (describing SG 5.0-145 turbines, among others, as being manufactured in Hutchinson, Kansas).[2]) For example, GE's subpoenas include requests for "[d]ocuments sufficient to show the operation, electrical design, and architecture of" the identified ZVRT wind turbines. (Doc. Nos. 1-3 at 12, 1-4 at 13.) One would expect that SGRE, Inc., as the manufacturer of nacelles and other components of these turbines, would have documents responsive to this and other requests, especially when SGRE, Inc. also markets and services the turbines.

Second, GE also understands that U.S. wind turbine customers take precautions when investing in wind turbine farms. Among these precautions, customers often require wind-turbine providers to deposit technical information with a third-party escrow, so that the customer can continue to operate the turbines in the event that the provider goes out of business or exits the industry. As the provider of ZVRT wind turbines, SGRE, Inc. would presumably be responsible for depositing technical information with such an escrow or otherwise arranging for such technical information to be secured in escrow for U.S. customers.

In short, SGRE, Inc. admittedly possesses certain technical information about the ZVRT turbines and likely possesses additional responsive technical information.

---

[2] John Green, *New nacelle coming to Hutchinson Siemens Gamesa plant*, The Hutchinson News (Jan. 21, 2018, 12:01 AM), https://www.hutchnews.com/; John Green, *Siemens Gamesa lands orders for two Texas wind farms*, The Hutchinson News (Sept. 2, 2020, 9:58 AM), https://www.hutchnews.com/; John Green, *Hutchinson plant lands contract for Nebraska wind farm turbines*, The Hutchinson News (Dec. 16, 2020, 2:55 PM) https://www.hutchnews.com/.

### III. Granting GE's Application Does Not Circumvent the ITC's Protective Order and Risk Confidentiality

SGRE, Inc. argues that it shouldn't be compelled to produce technical documents in its possession (including by virtue of its earlier ITC case involving GE) based on *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018), where the Second Circuit reversed the grant of a § 1782 Application. But *Kiobel* is inapplicable for a number of reasons.

First, GE's Application is not directed at a law firm, so *Kiobel*'s central reasoning to protect the attorney-client privilege is irrelevant. *See In re Warren*, 20 Misc 208 (PGG), 2020 WL 6162214, at *10 (S.D.N.Y. Oct. 21, 2020). SGRE, Inc's reliance on *Sarrio*, 119 F.3d 143, for the same point is likewise immaterial.

Second, SGRE, Inc.'s "disclosure of its own documents is not restricted by the [ITC] protective order." *Id.* And as noted below, the parties have exchanged drafts of a protective order—the draft initially provided by SGRE, Inc.—that will apply to maintain confidentiality of the documents SGRE, Inc. produces in this matter. A similar protective order was entered by this Court in GE's previous § 1782 proceeding seeking discovery from SGRE, Inc. *See Stipulated Protective Order, In re GE,* No. 1:21-mc-91075 (D. Mass. Jul. 21, 2021), Doc. No. 56.

Under that protective order, SGRE, Inc. produced technical documents from the ITC case for GE's use in foreign patent infringement cases, including pending cases in Germany and Spain, and a reasonably contemplated case in the UK. *See Stipulation, id.*, Doc. No. 57 at 4-5 (listing documents). This satisfied GE's discovery requests in that proceeding and allowed GE to use the produced documents in proceedings in Germany and Spain, under the confidentiality protections offered by those jurisdictions. (*See, e.g.*, Doc No. 2-1 ¶¶ 18-20 (Stoll Decl.); Doc. No. 2-2 ¶¶ 6-8 (Jarque Decl.).) In fact, those documents were considered by the tribunals in the foreign proceedings, and a foreign

tribunal found SGRE entities to have infringed.  SGRE, Inc. should not be heard to complain about confidentiality or other concerns in this proceeding.[3]

Third, § 1782 does not require that the documents and information produced be discoverable in the Foreign Proceedings.  *See Minis v. Thomson*, No. 14-91050-DJC, 2014 WL 1599947, at *4 (D. Mass. Apr. 18, 2014) (noting that there is no "foreign-discoverability requirement" (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 253 (2004)).  So SGRE, Inc.'s allegation that GE is seeking to circumvent the "proof-gathering restrictions and procedural policies of the courts in Spain and Germany" is meritless.  (Doc. No. 17 at 12).

As noted above, the parties are revising a previously stipulated-to protective order for use in this matter.  The stipulated protective order is being prepared to address SGRE, Inc.'s confidentiality concerns and will include provisions for marking certain confidential documents as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," among other confidentiality designations.  The requisite precautions have in the past protected and will be in place to protect SGRE, Inc.'s trade secrets in the U.S., in Germany, and in Spain.  (*See, e.g.*, Doc. No. 2-1 ¶¶ 18-20; Doc. No. 2-2 ¶ 7.)

## IV.     Conclusion

For these reasons, the Court should grant GE's Application for discovery from SGRE, Inc.

---

[3] In that earlier § 1782 proceeding, before SGRE, Inc. agreed to produce documents to GE, it had argued that GE was too late in seeking the documents for use in GE's pending Spanish action.  *See SGRE, Inc.'s Memo ISO Mot. to Vacate, Application of GE*, No. 1:21-mc-91075 (D. Mass. Jul. 21, 2021), Doc. No. 27 at 1, 8, 18.  So GE's present § 1782 Application seeks discovery for its contemplated Spanish action to ensure that it receives the requested documents in time to use them when filing that action.

Although GE's Application document inadvertently did not recite "Spain" in the list of Foreign Proceedings, (*see* Doc. No. 1 at 1), GE's Memorandum supporting the Application and the Declaration of Ignacio Marqués Jarques accompanying that Memorandum make clear that GE reasonably contemplates bringing an action in Spain, (*see* Doc. No. 2 at 1-4, 7, 10-13, 14; Doc. No. 2-2 ¶¶ 3-4, 6.)

|  |  |
|---|---|
| Dated: June 10, 2022 | Respectfully submitted,<br><br>**GENERAL ELECTRIC COMPANY**<br><br>By their attorneys,<br><br>*/s/ Gregory F. Noonan*<br>Gregory F. Noonan (BBO #651035)<br>gregory.noonan@hoganlovells.com<br>HOGAN LOVELLS US LLP<br>125 High Street, Suite 2010<br>Boston, MA 02110<br>Phone:  (617) 371-1000<br>Facsimile:  (617) 371-1037<br><br>Celine J. Crowson (*pro hac vice*)<br>(District of Columbia Bar No. 0436549A)<br>celine.crowson@ hoganlovells.com<br>HOGAN LOVELLS US LLP<br>555 13th St. NW<br>Washington, DC 20004<br>Phone:  (202) 637-5600<br>Facsimile:  (202) 637-5910 |

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 10, 2022, the foregoing Reply was electronically filed using the Court's CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

/s/ Gregory F. Noonan

Gregory F. Noonan