UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | * | |
| IN RE: *EX PARTE* APPLICATION OF | * | |
| GENERAL ELECTRIC COMPANY | * | Civil Action No. 1:22-cv-91125-IT |
| FOR AN ORDER TO TAKE DISCOVERY | * | |
| PURSUANT TO 28 U.S.C. § 1782. | * | |
| | * | |

<u>MEMORANDUM & ORDER</u>

November 4, 2022

TALWANI, D.J.

Before this court is the <u>Amended Application</u> [Doc. No. 31] ("Application") of General Electric Company ("GE") to take discovery pursuant to 28 U.S.C. § 1782 from Siemens Gamesa Renewable Energy, Inc. ("SGRE Inc.") for use in patent-infringement actions GE has brought in Germany and contemplates bringing in Spain.

For the following reasons, GE's <u>Application</u> [Doc. No. 31] is GRANTED IN PART and DENIED IN PART as to the request to take discovery for use in the action brought in Germany and is DENIED as premature as to the contemplated action in Spain.

**I.      Background**

A. *The Parties and Related Entities*

Petitioner GE is a multinational company headquartered in Boston that supplies wind turbines across the globe and has invested in wind-turbine research and development. Mem. in Supp. 2 [Doc. No. 2]. Respondent SGRE Inc. sells variable speed wind turbines for both onshore and offshore use. Reuter Decl. ¶ 6 [Doc. No. 19]. SGRE Inc. has a facility in Iowa that

manufactures wind turbine blades and a facility in Kansas that manufactures hubs and nacelles[1] used in wind turbines. Reuter Decl. ¶ 15 [Doc. No. 19]. It also has an office in Colorado that houses a "loads and controls" engineering group that studies the effects of various wind, temperature, and other atmospheric loads on the wind turbines, and that works on the controls used on the wind turbines. Id. SGRE Inc.'s corporate headquarters is located in Florida, and it has a Massachusetts office that supports the sale of offshore wind turbines. Pence Decl. at ¶¶ 2, 5 [Doc. No. 18].

SGRE Inc. is a wholly owned U.S. subsidiary of Siemens Gamesa Renewable Energy, S.A. ("SGRE S.A."), a Spanish corporation. Pence Decl. ¶ 3 [Doc No. 18]. SGRE S.A. is also the parent company of several European subsidiaries, including Siemens Gamesa Renewable Energy A/S ("SGRE Denmark"), a Danish corporation; Gamesa Electric S.A. Unipersonal ("SAU Spain"), a Spanish corporation; and German corporations Siemens Gamesa Renewable Energy GmbH & Co KG and Siemens Gamesa Renewable Energy Management GmbH (collectively "SGRE Germany"). Id. at ¶ 4. SGRE S.A. and its subsidiaries market, sell, service, and provide operations and support for wind turbine products in the U.S. through SGRE Inc. Reuter Decl. ¶ 9 [Doc. No. 19]. All variable speed wind turbines sold by SGRE Inc. are designed and developed by SGRE Denmark and SAU Spain. Id.

B.  *GE's Patent-Infringement Suits Against SGRE Inc. and SGRE Inc.'s Affiliates*

GE and SGRE entities are engaged in multiple patent infringement lawsuits relating to wind turbine technology, including before the U.S. International Trade Commission ("USITC"),

---

[1] A nacelle is placed at the top of a wind turbine tower and contains the electricity generating components. The hub is attached to the front of the nacelle, and the three blades are attached to the hub. The hub and blades comprise the rotor. Reuter Decl. ¶ 15 n.2 [Doc. No. 19].

in the U.S. District Court for the District of Massachusetts, in Germany and in Spain. Rotz Decl. ¶ 3 [Doc. No. 2-3].

On December 30, 2020, GE filed an amended complaint against SGRE Inc., SGRE Denmark and SAU Spain requesting that the USITC institute an investigation pursuant to Section 337 of the Tariff Act, as amended, 19 U.S.C § 1337, to remedy the unlawful importation/sale for importation and/or sale with U.S after importation of certain variable sped wind turbine generators and components thereof that infringe GE's U.S. Patent Nos. 6,921,985 and 7,629,705 ("USITC Proceeding"). Rotz Decl. ¶ 4 [Doc. No. 2-3]; USITC First Am. Compl. [Doc. No. 2-4]. As part of the USITC Proceeding, GE obtained discovery subject to a protective order specifying that the discovery could be used only by GE's outside counsel and only for the purposes of the USITC investigation. Harbin Decl. ¶ 3 [Doc. No. 21]; USITC Protective Order [Doc. No. 21-1]. Pursuant to the USITC protective order, "[u]pon final termination of th[e] investigation, each recipient of confidential business information that is subject to th[e] order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 [in the protective order], including all copies of such matter which may have been made." USITC Protective Order ¶ 14 [Doc. No. 21-1].

On January 17, 2022, GE filed an action in Germany against SGRE Germany (the "German Action"), alleging infringement of European Patent No. EP 3 460 982 B9 (the "'982 Patent"). Mem. in Supp. 5 [Doc. No. 2]; Stoll Decl. ¶ 4 [Doc. No. 2-1].[2]

---

[2] Christian Stoll is the lead counsel for GE in the German Action. Stoll Decl. ¶ 4 [Doc. No. 2-1].

GE states that it is contemplating bringing a patent suit in Spain (the "Spanish Action") alleging infringement of the '982 Patent and European Patent No. EP 3 783 795 B1 (the "'795 Patent").[3] Jarque Decl. ¶¶ 3-4 [Doc. No. 2-2]; Mem. in Supp. 12 [Doc. No. 2].[4]

C.  *The Pending Petition*

GE now petitions the court, pursuant to § 1782, for authorization to take discovery from SGRE Inc., for use in GE's German Action and contemplated Spanish Action. Specifically, the Application [Doc. No. 31] requests leave to serve SGRE Inc. with the following: (i) two subpoenas seeking documents in SGRE Inc.'s possession, custody or control for use in foreign patent infringement proceedings pending in Germany and contemplated in Spain and (ii) subpoenas for documents and depositions under Fed. R. Civ. P. 30(b)(6) of SGRE Inc.'s corporate representative.

## II.    Statement of Law

"Today's § 1782 is the product of over 150 years of Congressional effort and manifests the intent to provide 'federal-court assistance in gathering evidence for use in foreign tribunals.'" In re Schlich, 893 F.3d 40, 46 (1st Cir. 2018) (quoting Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004)). "The text of § 1782 provides that granting discovery is proper only if: 1) the person from whom discovery is sought 'resides or is found' in the district where the court sits; 2) the request seeks evidence (the 'testimony or statement' of a person or the production of a 'document or other thing') 'for use in a proceeding in a foreign or international tribunal'; 3) the request is made by a foreign or international tribunal or by 'any interested

---

[3] The European Patent Office published the '795 Patent on March 23, 2022. https://data.epo.org/publication-server/document?iDocId=6782652&iFormat=0.

[4] GE and SGRE, S.A. are also involved in other patent-infringement litigation in Spain. Jarque Decl. ¶ 6 [Doc. No. 2-2].

person'; and 4) the material sought is not protected by 'any legally applicable privilege.'" Id. (quoting 28 U.S.C. § 1782(a)).

"Once the statutory requirements are satisfied, district courts have discretion to grant section 1782 discovery." In re Porsche Automobil Holding SE, 985 F.3d 115, 120 (1st Cir. 2021). "In exercising this discretion, courts consider (1) whether the discovery is sought from a participant in a foreign proceeding (thereby suggesting that the foreign tribunal might obtain the discovery 'absent § 1782(a) aid'); (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad' to assistance from U.S. federal courts; (3) whether a section 1782 request 'conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States'; and (4) whether the subpoena contains 'unduly intrusive or burdensome requests.'" Id. (quoting Intel Corp., 542 U.S. at 264-65).

### III.   Discussion

1.      Section 1782 Statutory Threshold Requirements

a.   Party Resides in the District

SGRE Inc.'s corporate headquarters is located in Florida, but it also has a Boston office that supports the sale of offshore wind turbines. Accordingly, where SGRE Inc. maintains an office in Boston, it is "found" in this district within the meaning of § 1782(a).

SGRE Inc. contends that the Application [Doc. No. 31] should be denied because the requested documents are located abroad. Opp'n 8-9 [Doc. No. 17]. GE contends that § 1782 does not prohibit discovery of documents merely because they are held outside of the United States. Reply 2 [Doc. No. 24]. Although lower courts are split on the issue, see In re Stati, 2018 WL 474999, at *5 (D. Mass. Jan. 18, 2018) and cases cited therein, the circuit courts addressing the

5

issue have found that the location of documents overseas is not a categorical bar but may be considered among the discretionary factors.

"[T]he Eleventh Circuit became the first circuit court so far to address whether § 1782 applies extraterritorially. The Eleventh Circuit reasoned that the text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure in turn authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control. Hence § 1782 likewise allows extraterritorial discovery." In re del Valle Ruiz, 939 F.3d 520, 533 (2d Cir. 2019) (discussing In re Sergeeva v. Tripleton Int'l Ltd., 834 F.3d 1194 (11th Cir. 2016)). The Second Circuit found "this reasoning persuasive . . . . [and] join[ed] the Eleventh Circuit in holding that a district court is not categorically barred from allowing discovery under § 1782 of evidence located abroad." Id. The Second Circuit "note[d] that a court may properly, and in fact should, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery." Id. The court agrees and finds no absolute bar to the § 1782 application based on the location of the documents, but addresses the issue further in connection with the discretionary factors.

      b.  For Use in a Foreign or International Tribunal

In the context of § 1782, "a 'foreign tribunal' is one that exercises governmental authority conferred by a single nation." ZF Auto. US, Inc. v. Luxshare, Ltd., 142 S. Ct. 2078, 2089 (2022). The requested discovery must bear relevance to the foreign proceedings. See In re Schlich, 893 F.3d at 52 ("[A] request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement, and must be denied . . .").

The proceeding in the German court qualifies as a "foreign . . . tribunal" within the meaning of § 1782(a). The discovery sought appears to be sufficiently relevant to that proceeding where GE has provided undisputed declarations that the German Action pertains to patent infringement litigation.

Section 1782 does not require that the foreign or international proceeding be pending, imminent, or already initiated. See Intel Corp., 542 U.S. at 258-59. "[A] party seeking discovery need often leave time to overcome persistent resistance, and Intel requires only that the proposed discovery's use be 'within reasonable contemplation.'" In re Porsche Automobil Holding SE, 985 F.3d at 120 (quoting Intel Corp., 542 U.S. at 259). SGRE Inc. contends that GE has not sufficiently proven that the Spanish Action is within reasonable contemplation. Opp'n 5-6 [Doc. No. 17].

"The circuit courts have grappled with the definition of 'within reasonable contemplation' in this context." Sandra Holding Ltd. v. Al Saleh, 2019 WL 3072197, at *2 (D. Mass. July 15, 2019) (quoting Intel Corp., 542 U.S. at 259). "The Eleventh Circuit has upheld a § 1782 discovery order where the petitioner had conducted an extensive internal audit related to the contemplated action, provided a facially legitimate and thorough explanation of this ongoing investigation, stated its intent both to commence a civil action and continue a related pending arbitration, and detailed how the discovery sought would be applied in its pleading before a foreign tribunal." Id. (citing Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1269 (11th Cir. 2014)). "The Second Circuit has upheld the denial of a § 1782 application where the petitioner alleged only 'that they had retained counsel and were discussing the possibility of initiating litigation,' despite having five years and ample opportunity in which to commence investigations or initiate litigation." Id. (quoting

Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, LLP, 798 F.3d 113, 124 (2d Cir. 2015) (emphasis in original)). "In both cases, however, the courts caution that § 1782 should not be used to enable a fishing expedition, whereby the petitioner uses the discovery process in a blind effort to find damaging evidence to be used against an adversary without any specific underlying legal claims or theory of liability." Id. (citing JAS Forwarding, 747 F.3d at 1274; KPMG, 798 F.3d at 124). In Sandra Holding Ltd., the court found that the petitioner had "reasonably contemplated" commencing an action where it had retained counsel for the purposes of initiating that action and reviewed certain relevant company documents. Id. at *3. There, the court reasoned that "[w]hile this review appears less substantial than the extensive internal audit that occurred in JAS Forwarding, it is nonetheless indicative of a reasonably contemplated foreign proceeding." Id.

In this case, GE proffers that "[o]n the basis of an independent technical report issued by an independent technical expert and European Patent Attorney with forensic experience, GE has strong grounds to believe that the Defendant in the contemplated Spanish litigation infringes the European Patent No. EP 3 460 982 B9 and [] European Patent No. EP 3 783 795 B1," and that the law firm of "Grau & Angulo will be lead counsel for GE in that action." Jarque Decl. ¶¶ 3-4 [Doc. No. 2-2].[5] The steps taken by GE parallel those taken by the petitioner in Sandra Holding, Ltd. and GE's contention that the Spanish Action is reasonably contemplated is bolstered by the fact that GE has commenced similar patent infringement lawsuits in other jurisdictions related to the patents that will be at issue in the Spanish Action.

---

[5] According to GE, in an earlier § 1782 proceeding, SGRE Inc. argued that GE was too late in seeking the documents for use in one of GE's Spanish actions and GE is now attempting to seek discovery in advance of its contemplated Spanish Action to ensure GE receives the requests in time to use them. Reply 7 n.3 [Doc. No. 24]

But where GE has not yet identified the defendant(s) in the Spain Action, the court finds that the Spanish Action is close but not yet "within reasonable contemplation" for purposes of the Application [Doc. No. 31]. See Jarque Decl. ¶ 4 [Doc. No. 2-2].

c.   Interested Person within the Meaning of Section 1782(a).

GE, as the plaintiff in the German Action and the contemplated Spanish Action, is "an interested person." See Intel Corp., 542 U.S. at 256.

d.   No Violation of Legally-Applicable Privilege.

While SGRE Inc. reserves the right to raise appropriate privilege objections where applicable pursuant to Fed. R. Civ. P. 45 if and when the proposed document and deposition subpoenas are issued, Opp'n 2-3 [Doc. No. 17], SGRE Inc. does not contend wholesale that the discovery sought would implicate a legally-applicable privilege. Accordingly, the court finds that this element does not create an obstacle in granting the Application [Doc. No. 31].

e.   Conclusion

The court finds, based on the analysis above, that GE has met the threshold requirement as to the German Action but has not yet met the threshold requirement as to the contemplated Spanish Action. Accordingly, the court considers the discretionary factors as they apply to the German Action.

2.      Intel's § 1782 Discretionary Factors

"In Intel, the Supreme Court set out a list of factors -- rather than elements of a claim -- 'that bear consideration' by the district court when it exercises its discretion under the statute, leaving it up to the district court to assign those factors weight based on the particular circumstances of each case." In re Schlich, 893 F.3d at 50. "The Supreme Court has not established the appropriate burden of proof, if any, for any of the discretionary factors, or the

legal standard required to meet that burden." Id. at 49. "Both parties are free to argue their positions and submit evidence in support thereof, and the district court is then to consider all of that in weighing these factors." Id. at 50. "[N]othing [] prevents district courts from considering relevancy under the discretionary Intel factors, including the second factor." Id. at 52.

"The district court's discretion to allow discovery if all § 1782 requirements are met is not boundless. Rather, district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" Id. at 46-47 (quoting Intel Corp., 542 U.S. at 252).

   a.  Jurisdictional Reach of Foreign Tribunal

The Supreme Court has explained as to the first Intel factor—jurisdictional reach of foreign tribunal—that "[w]hen the person from whom discovery is sought is a participant in the foreign proceeding  . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." Intel Corp., 542 U.S. at 244.

GE argues the first Intel factor does not "weigh against discovery . . . due to the lack of effective discovery procedures" in Germany. Mem. in Supp. 13 [Doc. No. 2]. This focus on "effective discovery procedures" in connection with this factor is somewhat misplaced. This factor relates to the foreign court's jurisdiction over the parties before it and "the critical question [of] whether the information targeted is within the foreign tribunal's jurisdictional reach." In re

<u>Porsche Automobil Holding SE</u>, 2019 WL 5806913, at *6 (D. Mass. Nov. 6, 2019), <u>adopted sub</u>

<u>nom. In re Porsche Automobil Holding SE</u>, 2020 WL 813710 (D. Mass. Feb. 19, 2020), <u>aff'd</u>,

2021 WL 140638 (1st Cir. Jan. 15, 2021). To the extent that the documents and witnesses are

within the German court's jurisdictional reach, this factor weighs against granting the

<u>Application</u> [Doc. No. 31], leaving to German courts and legislature the question of whether the

discovery of documents or depositions of witnesses located in Germany should be permitted. If

the documents or witnesses are not within the German court's jurisdictional reach, however, the

factor weighs in favor of the application.

GE further contends that SGRE Inc. is not a party to or participant in the German Action.

Mem. in Supp. 13 [Doc. No. 2]. SGRE Inc. responds that SGRE Denmark and SAU Spain are

the real parties in interest here because all variable speed wind turbines sold by SGRE Inc. are

designed and developed by those two SGRE entities. Opp'n 11 [Doc. No. 17]; Reuter Decl. ¶ 9

[Doc. No. 19]. According to SGRE Inc., "these European entities are the custodian of documents

relating to the design and mode of operation of SGRE wind turbines during zero voltage events."

Reuter Decl. ¶ 9 [Doc. No. 19]. But those European entities are also not parties to the German

Action (which is against SGRE Germany) and regardless of whether the documents are in the

United States, Spain, or Denmark, they are outside of the German court's jurisdictional reach

based on GE's unchallenged assertion that "Sections 142 of the Civil Code of Procedure and

Section 140c of the German Patent Act reach only information and documents located in

Germany." Stoll Decl. ¶ 8 [Doc. No. 2-1]. Accordingly, to the extent that the discovery sought in

the application is not in Germany and therefore not within the jurisdictional reach of the German

tribunal, the first <u>Intel</u> factor weighs in favor of granting the <u>Application</u> [Doc. No. 31].

b. Nature and Receptivity of Foreign Tribunal

"[A] court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to US federal-court judicial assistance." Intel Corp., 542 U.S. at 264. As the Supreme Court has explained, the primary purpose of the statute is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." Id. at 262. Accordingly, "[c]ourts have been instructed to tread lightly and heed only clear statements by foreign tribunals that they would not welcome § 1782 assistance." In re Porsche, 2019 WL 5806913, at *7 (internal quotation marks and citation omitted).

GE contends that the German court would be receptive to evidence obtained through GE's Application [Doc. No. 31]. Mem. in Supp. 14 [Doc. No. 2]. SGRE Inc. contends that while the First Circuit has not yet ruled on the issue of whether discoverability and admissibility may be considered under the Intel factors, courts in this district have done so and found that that "[i]n a situation where the foreign tribunal restricts discovery, granting the application could undermine the statute's objective." Opp'n 7 n.4 [Doc. No. 17] (quoting In re Babcock Borsig AG, 583 F. Supp. 2d 233, 241 (D. Mass. 2008), disagreed with on other grounds by In re Schlich, 893 F.3d at 49).

However, the Intel Court noted that "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions; such reasons do not necessarily signal objection to aid from United States federal courts." Intel Corp., 542 U.S. at 244. In this case, SGRE Inc.'s argument that Germany's restricted discovery procedures indicate a lack of receptivity fails in the face of GE's concrete examples illustrating receptivity by

German courts of evidence acquired pursuant to § 1782. GE provides Attorney Stoll's declaration stating that he has "had several cases where a U.S. court granted an application under section 1782 and where the evidence obtained from the United States was successfully introduced into the German proceedings," Stoll Decl. ¶ 16 [Doc. No. 2-1], and cites several cases where courts have either granted a § 1782 application for use in a German proceeding or discussed a German court's use of documents obtained pursuant to § 1782, Mem. in Supp. 14-15 [Doc. No. 2].

Accordingly, the court finds that the German courts are receptive to discovery pursuant to § 1782 and that the second <u>Intel</u> factor weighs in favor of granting the <u>Application</u> [Doc. No. 31].[6]

### c.   Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies

The third <u>Intel</u> factor—whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States— weighs in favor of granting discovery pursuant to § 1782 as to the discovery at issue here, namely discovery that is not within the jurisdictional reach of the German court.

SGRE Inc. contends that GE's discovery requests "have the effect of circumventing the . . . proof-gathering restrictions and procedural policies of the courts in . . . Germany." Opp'n 12 [Doc. No. 17]. The <u>Intel</u> Court made clear, however, that "Section 1782(a) does not impose a foreign-discoverability requirement . . . . [and] nothing in § 1782(a)'s text limits a district court's

---

[6] Reuter's declaration that "[s]ince North American grid codes regarding zero voltage events are <u>most likely</u> different than grid codes in Germany, Spain, or the U.K., it is <u>unlikely</u> that the customer-specific Grid Performance Specifications would be helpful in other countries," Reuter Decl. ¶ 12 [Doc. No. 19] (emphasis added), is insufficient to support a finding that such documents are irrelevant to the foreign proceeding.

production-order authority to materials discoverable in the foreign jurisdiction if located there."
Intel Corp., 542 U.S. at 243. Thus, courts in this district have consistently found that the third
Intel factor does not require that petitioner "seek the foreign court's blessing . . . . The inquiry
here is whether the discovery is being sought in bad faith." Chevron Corp. v. Shefftz, 754 F.
Supp. 2d 254, 262 (D. Mass. 2010); see also In re Valitus, Ltd., 2020 WL 6395591, at *8 (D.
Mass. Nov. 2, 2020) (quoting In re Porsche, 2019 WL 5806913, at *8) (finding the third Intel
factor "boils down to whether the discovery is being sought in bad faith").

      GE may be seeking documents or witnesses because it cannot do so under German
discovery procedures, but that does not mean that GE is acting in bad faith in requesting such
discovery in its Application [Doc. No. 31]. See In re Valitus, Ltd., 2020 WL 6395591, at *8
("Despite the fact that [petitioner] is, admittedly, seeking the documents from [respondent]
because it is unable to obtain them from its party-opponents under foreign procedures, there is no
evidence that [petitioner] is acting in bad faith by thwarting those procedures. Rather, [petitioner]
is entitled to seek what appears to be highly relevant discovery in order to prosecute its case and
estimate its damages."); see also Chevron Corp, 754 F. Supp. 2d at 262 ("Petitioner's request for
discovery appears to be a good faith effort to elicit evidence that has probative value in both
[foreign proceedings]. There is no evidence of bad faith or an attempt to circumvent foreign
proof-gathering restrictions." (internal quotation marks omitted)); In re Ex Parte Application of
Pro-Sys Consultants & Neil Godfrey, Applicants, 2016 WL 4154306, at *2 (D. Mass. Aug. 5,
2016) ("With respect to the third [Intel] factor . . . . Without a clearer statement from that court,
[respondent] has not demonstrated that the applicants are engaged in an effort to thwart a
prohibition on foreign depositions in the Trial Management Order").

Accordingly, the court finds that the third Intel factor weighs in favor of granting the discovery request sought in the Application [Doc. No. 31].

       d.  Undue Intrusion and Burden

"[T]he fourth [Intel] factor addresses whether the request is 'unduly intrusive or burdensome' to the extent that it should either be 'trimmed' or rejected outright." In re Schlich, 893 F.3d at 47 (quoting Intel Corp., 542 U.S. at 265). "In the § 1782 context, '[r]equests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information.'" Sandra Holding Ltd., 2019 WL 3072197, at *4 (quoting In re Ex Parte Application of Qualcomm Inc., 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016)).

GE contends that its requested discovery is narrowly tailored and focuses on information regarding the mechanics and operation of SGRE Inc.'s onshore and offshore wind turbines related to their connection to the electrical grid and the '982 Patent and '795 Patent. Mem. in. Supp. 17 [Doc. No. 2]. GE further contends that any confidentiality concerns do not pose an obstacle where GE is prepared to enter into a protective order and German law provides adequate protection for confidential documents or information submitted to the German court. Id.[7]

---

[7] GE points to the protective order entered in another § 1782 proceeding in this district in which GE sought from SGRE Inc. technical documents for use in patent-infringement proceedings in Germany, Spain, and potentially the United Kingdom. See No. 1:21-mc-91075 (D. Mass. Jul. 21, 2021). That § 1782 proceeding was resolved by stipulation, and GE obtained documents, testimony, and interrogatory answers from SGRE Inc. under a stipulated protective order. See Stipulated Protective Order, No. 1:21-mc-91075 [#56]; Stipulation, In re General Electric Co., No. 1:21-mc-91075 [#57]. Pursuant to the stipulated protective order in that case, GE was able to use the discovery from the § 1782 proceeding in patent infringement suits against SGRE entities in foreign proceedings, including in Germany and Spain. See Reply 6-7 [Doc. No. 24]; Stipulated Protective Order § 7 (Access To And Use Of Protected Material), In re General Electric Co., No. 1:21-mc-91075 [#56].

SGRE Inc. argues that GE cannot use § 1782 to circumvent another protective order to obtain SGRE Denmark and SAU Spain's foreign documents in possession of counsel in the U.S. and, even if SGRE Inc. could produce the records GE seeks, complying with GE's subpoenas would be unduly burdensome and intrusive because doing so would require SGRE Inc. to turn over highly sensitive, proprietary information belonging not to SGRE Inc. but to SGRE Denmark and SAU Spain. Opp'n. 8-9 [Doc. No. 17]. SGRE Inc. further contends that it cannot adequately prepare and provide answers to the proposed deposition topics. Id. at 9. In considering SGRE Inc.'s responses to these arguments, the court focuses first on the different locations of the documents at issue and who possess them and then on the witness testimony at issue.

             i.        Documents Held by SGRE Inc.'s U.S. Counsel

As discussed above, GE obtained discovery in the USITC Proceeding subject to a protective order, which specified that the discovery could be used only by GE's outside counsel and only for the purposes of the USITC investigation. SGRE Inc. contends—and GE does not dispute—that documents sent by SGRE Denmark and SAU Spain to the U.S. for purposes of the USITC proceeding are in the United States in the possession of joint counsel for SGRE Denmark, SAU Spain and SGRE Inc. Opp'n 9 [Doc. No. 17]. SGRE Inc. argues that GE cannot use § 1782 to circumvent the USITC protective order to obtain SGRE Denmark and SAU Spain's foreign documents in possession of counsel in the United States.

SGRE Inc. relies heavily on Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238 (2d Cir. 2018), where the Second Circuit held that the district court abused its discretion in granting a § 1782 application requesting documents from a Dutch company's U.S. counsel. The Dutch company had previously "disclosed the documents under a confidentiality order that expressly barred [petitioner] from using the documents in any other litigation." Id. The

Second Circuit found that "[i]t is perilous to override the confidentiality order; doing so would inhibit foreign companies from producing documents to U.S. law firms, even under a confidentiality order, lest Section 1782 become a workaround to gain discovery." Id. at 247.

Kiobel's reasoning is persuasive. "If foreign clients have reason to fear disclosing all pertinent documents to U.S. counsel, the likely results are bad legal advice to the client, and harm to our system of litigation. In order to avoid potential disclosure issues under Section 1782, U.S. law firms with foreign clients may be forced to store documents and servers abroad, which would result in excessive costs to law firms and clients. Alternatively, U.S. law firms may have to return documents to foreign clients (or destroy them) as soon as litigation concludes." Id. Those concerns are present in this case where SGRE Denmark and SAU Spain provided confidential documents to U.S. counsel for purposes of the USITC Proceeding, and GE entered into a stipulated protective order in that proceeding, requiring that "[u]pon final termination of th[e] investigation, each recipient of confidential business information that is subject to th[e] order shall assemble and return to the supplier all items containing such information submitted in accordance with paragraph 2 [in the protective order], including all copies of such matter which may have been made." USITC Protective Order ¶ 14 [Doc. No. 21-1].

Accordingly, to the extent that GE seeks documents produced in the USITC Proceeding that are in possession of SGRE Inc.'s U.S. counsel, the court finds that the fourth Intel factor predominates and overwhelmingly weighs against granting the Application [Doc. No. 31].

        ii.        Documents Located Abroad

SGRE Inc. argues that all other records GE seeks (except for some information regarding sales and damages discussed below) are located abroad in the possession of SGRE Denmark and SAU Spain. Opp'n 8-9 [Doc. No. 17]. SGRE Inc. further claims that due to the proprietary and

highly confidential nature of the records at issue, SGRE Inc. personnel can access only limited portions of the records and must establish a qualifying business-specific need in order to do so. Id.; Reuter Decl. ¶¶ 9-17 [Doc. No. 19]; Marcucci Decl. ¶ 10 [Doc. No. 20]. GE contends that SGRE Inc. has sufficient access to responsive documents held by the European SGRE entities abroad such that SGRE Inc. is in control of such documents for purposes of the Application [Doc. No. 31]. See Reply 2-5 [Doc. No. 24].

For discovery under the Federal Rules of Civil Procedure, "courts have expanded the 'control' test to include not only a legal right, but also the actual ability of the subsidiary to access and obtain the requested documents." FM Generator, Inc. v. MTU Onsite Energy Corp., 2016 WL 8902603, at *3 (D. Mass. Aug. 25, 2016) (citing Addamax Corp. v. Open Software Found., Inc., 148 F.R.D. 462, 467 (D. Mass. 1993)); see also LSI Corp. v. Vizio, Inc., 2012 WL 1926924, at *5 (D. Mass. May 24, 2012) ("[C]ourts have regularly permitted discovery of information from one corporation based on its relationship with, and ability to obtain documents from, a related corporate entity"). Courts have found control to exist, in relevant part, where ". . . the relationship is such that the agent-subsidiary can secure documents of the principal-parent to meet its own business needs . . . ; [] there is access to documents when the need arises in the ordinary course of business; and [] subsidiary was marketer and servicer of parent's product . . . in the United States." FM Generator, Inc., 2016 WL 8902603, at *3.[8] Further, "[w]hen determining whether documents in the possession of one corporation may be deemed under the control of another corporation, courts also consider whether there has been an exchange or

---

[8] FM Generator, Inc. also considered whether the entity could obtain "documents helpful for use in litigation" but the court finds this fact irrelevant here where SGRE Inc. is not a party to the underlying litigation.

intermingling of directors, officers, or employees of the two corporations, whether there is any

benefit or involvement by the non-party corporation in the transaction, and whether there is any

involvement of the non-party corporation in the litigation." Id. At bottom, "a court must look to

the specific nature of the transactional relationship between the subsidiary and the parent

company when determining whether control exists." Id. The petitioner "carries the burden of

making a prima facie showing that [respondent] has 'control' of the documents at issue here." Id.

(citing Addamax, 148 F.R.D. at 465 n.3).

GE contends that SGRE Inc. has conceded that "its employees regularly access, possess,

and control technical documents from related SGRE entities purportedly located outside of the

United States." Reply 2 [Doc. No. 24]. SGRE Inc.'s position is more nuanced. Guido Reuter, the

Director of Engineering for SGRE Inc., states that "[a]ll data relating to the design and

development of wind turbines are owned by [SGRE Denmark and SAU Spain] and . . . SRGE

Inc. cannot access this data without specific permission from the entity housing the data." Reuter

Decl. ¶ 9 [Doc. No. 19]. According to Reuter, the documents sought by GE "would be

considered highly confidential and proprietary by SGRE [Denmark] and SAU [Spain], and

therefore SGRE[] Inc. personnel could only obtain access to limited tranches of these documents

by request based upon a certified business-specific need." Id. at ¶ 10. To the extent that GE's

document requests seek source code, Reuter states that "SGRE Inc. personnel do not have

access." Id. at ¶ 11.

At the motion hearing, GE relied upon Addamax Corp. for its assertion that "in a

situation in which the defendant was the 'distributor and servicer' of a [foreign] affiliate's

[product] . . . it [is] 'inconceivable that defendant would not have access to these documents and

the ability to obtain them for its usual business.'" Addamax Corp., 148 F.R.D. at 467 (quoting

Cooper Indus., Inc. v. Brit. Aerospace, Inc., 102 F.R.D. 918, 919 (S.D.N.Y. 1984)). However, in
Cooper Indus., Inc., the court continued to state that "the documents and records that a
corporation requires in the normal course of its business are presumed to be in its control unless
the corporation proves otherwise," and the "[d]efendant ha[d] submitted nothing more than
conclusory statements to show that these documents are not in its custody or control." Cooper
Indus., Inc., 102 F.R.D. at 920 n.2. Although, SGRE Inc. acts as a distributor and marketer on
behalf of the SGRE conglomerate for wind turbine products in the United States, SGRE Inc. has
provided declarations refuting the presumption that SGRE Inc. can request all the responsive
documents at issue in the Application [Doc. No. 31] in the normal course of business from its
European affiliates.

    Accordingly, to the extent that GE seeks documents that SGRE Inc. may not access from
SGRE Denmark and SAU Spain in the normal course of business, such as source code, such
documents are not within SGRE Inc.'s control, and are outside the scope of permissible
discovery under the Federal Rules of Civil Procedure, and the court finds no basis to allow the
§ 1782 application. But to the extent that SGRE Inc. may access such documents for a business-
specific need (other than litigation), the court finds that such documents are within SGRE Inc.'s
control. While SGRE Inc. objects based on the confidential nature of this information, these
concerns can be addressed by a protective order. As GE notes, GE and SGRE, Inc. have
exchanged drafts of a protective order[9] similar to that entered in the parties' prior § 1782
proceeding in this district, GE has expressed its willingness to stipulate to such an order in this
case, Reply 2, 7 [Doc. No. 24], and GE's German counsel has stated that GE will cooperate with

_____

[9] GE notes that the initial draft of the protective order was provided by SGRE Inc. Reply 6 [Doc.
No. 24].

the SGRE entities to take advantage of the procedures in the German courts for protecting parties' confidential information, Stoll Decl. ¶¶ 18-20 [Doc. No. 2-1].

Accordingly, to the extent that GE seeks documents in possession of SGRE Denmark or SAU Spain that SGRE Inc. may access in the normal course of business, the court finds that the fourth Intel factor weighs in favor of granting the Application [Doc. No. 31] so long as a protective order is in place.

iii.    Other Documents Held by SGRE Inc. in the U.S.

GE also contends that SGRE Inc. has physical possession of technical documents sought by GE. SGRE Inc. admits that it has possession of at least some responsive documents, such as the "Grid Performance Specifications" that SGRE Inc. provides to customers to describe wind turbine operations,[10] Marcucci Decl. ¶ 8 [Doc. No. 20], and documents responsive to Paragraph 13 of GE's Subpoena (sales/damages information), Opp'n 8 n.5 [Doc. No. 17].

As to these documents located in the United States, the court again finds that the fourth Intel factor weighs in favor of granting the Application [Doc. No. 31] so long as a protective order is in place.

_____

[10] As part of the wind turbine sales process, engineers at SGRE Denmark or at SAU Spain provide SGRE Inc.'s sales support personnel technical information about the manner in which the wind turbine interacts with the power grid, which SGRE Inc. in turn, provides to customers. Reuter Decl. ¶ 12 [Doc. No. 19]. The information is supplied in a document called a "Grid Performance Specification." Id. One of the purposes of the Grid Performance Specification is to provide customers with information regarding performance of the wind turbine during a zero-voltage event in the power grid to which the wind turbine is connected. Id. at ¶ 13. The Grid Performance Specifications are provided to customers on a restricted basis, pursuant to a non-disclosure agreement ("NDA"), for purposes of explaining the operation of the products sold. Id.

iv.      Rule 30(b)(6) Depositions

With respect to the Fed. R. Civ. P. 30(b)(6) ("Rule 30(b)(6)") depositions, GE contends

that the deposition of a corporate officer under Rule 30(b)(6) is not unduly burdensome and that

such depositions are standard practice in any U.S. civil litigation and the Rules of Civil

Procedure themselves ensure that the length, time and place of the deposition do not impose an

undue burden. Mem. in Supp 17 [Doc. No. 2]. SGRE Inc. contends that it would not have access

to the documents necessary to prepare and provide answers to paragraphs 1-12 of the deposition

notice. Opp'n 9 [Doc. No. 17].

"Rule 30(b)(6) allows an organization to designate an individual to testify on its behalf."

Trustees of Bos. Univ. v. Everlight Elecs. Co., 2014 WL 5786492, at *3 (D. Mass. Sept. 24,

2014) (internal quotation marks omitted). "Accordingly, Rule 30(b)(6) imposes burdens on . . .

the designating party" in that "[t]he designating party must make a good faith effort to prepare its

designees so that they can answer questions fully, completely and unevasively." Id. (citing

Briddell v. Saint Gobain Abrasives, Inc., 233 F.R.D. 57, 60 (D. Mass. 2005)). "The duty to

prepare a Rule 30(b)(6) designee 'goes beyond matters personally known to that designee or to

matters in which the designee was personally involved.'" Id. (quoting Briddell, 233 F.R.D. at

60). "If necessary, the deponent must use documents, past employees, and other resources in

performing the required preparation." Id. (citing Briddell, 233 F.R.D. at 60).

Where a Rule 30(b)(6) deposition is sought from a litigant, the burden of a 30(b)(6)

deposition is acceptable as "merely the result of the concomitant obligation from the privilege of

being able to use the corporate form in order to conduct business." Id. (internal quotation marks

omitted). In contrast here that burden is not justified, where SGRE Inc. is not a party to the

German Action and where GE is asking the Rule 30(b)(6) deponents to testify "about

information known or reasonabl[y] available to SGRE Inc. concerning the facts of the anticipated and pending patent infringement disputes in the [f]oreign [p]roceedings, together with the nature, and extent, and location of such documents." Application ¶ 1 [Doc. No. 31]. The corporate officers best suited to testify about GE's proposed deposition topics are employed by SGRE Germany and are within the German court's jurisdictional reach. Reuter states that "SGRE[] Inc. would only have limited access to the documents necessary to prepare for and provide answers to the topics of the deposition notice." Reuter Decl. ¶ 10 [Doc. No. 19]. Moreover, SGRE Inc.'s Massachusetts office supports the sales of offshore wind turbines, rather than the manufacturing or design function. Thus, "educating a knowledgeable Rule 30(b)(6) deponent will be time consuming given the lack of knowledge on the part of potential deponents" located in Massachusetts regarding the topics proposed. State St. Corp. v. Stati, 2020 WL 8839775, at *22 (D. Mass. Nov. 16, 2020) (citing Fed. R. Civ. P. 45(c), report and recommendation adopted, 2021 WL 1010697 (D. Mass. Feb. 25, 2021).

Accordingly, the court finds that GE's request for Rule 30(b)(6) depositions is overly burdensome and the fourth Intel factor weighs heavily against granting the Application [Doc. No. 31] as to the Rule 30(b)(6) depositions.

## IV.    Conclusion

For the foregoing reasons, GE's Application [Doc. No. 31] is GRANTED IN PART and DENIED IN PART as to the request to take discovery for use in the action brought in Germany and is DENIED as premature as to the contemplated action in Spain. With respect to the German Action,

1. To the extent that GE requests documents in the possession of U.S. counsel that represented the SGRE entities in the USITC Proceeding, Inv. No: 337-TA-1218, GE's Application [Doc. No. 31] is DENIED.

2. To the extent that GE requests documents in the possession of SGRE Germany in the normal course of business, GE's Application [Doc. No. 31] is DENIED.

3. To the extent that GE requests documents that SGRE Inc. may not access from SGRE Denmark and SAU Spain in the normal course of business, GE's Application [Doc. No. 31] is DENIED.

4. To the extent that GE requests documents that (i) SGRE Germany does not possess in the normal course of business and (ii) SGRE Inc. may access from SGRE Denmark and/or SAU Spain pursuant to permission from those entities in the normal course of business or are in SGRE Inc.'s possession in the United States, GE's Application [Doc. No. 31] is GRANTED subject to a protective order stipulated to by both parties.

5. To the extent that GE requests Rule 30(b)(6) depositions, GE's Application [Doc. No. 31] is DENIED.

IT IS SO ORDERED.

Dated: November 4, 2022                               /s/ Indira Talwani
                                                     United States District Judge